Filed 8/5/24  P. v. Swafford CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081354 |
| v. | (Super.Ct.No. FVI22003177) |
| BRUCE CLAYTON SWAFFORD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Shannon L. Faherty, Judge.  Affirmed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Bruce Clayton Swafford appeals from a judgment of conviction entered after a jury found him guilty of possession of a firearm by a felon.

1

(Pen. Code, § 29800, subd. (a)(1).)[1]  Separately, the trial court found true the allegation that he had committed a prior serious or violent felony pursuant to sections 1170.12 and 667.  He contends the court prejudicially erred in finding a witness unavailable and allowing the admission of her preliminary hearing testimony.  We disagree and affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

On December 24, 2021, Deputy Flores and Sergeant Williams of the San Bernardino County Sheriff's Office responded to a call at the apartments on Bear Valley Road in Apple Valley.  By the time they arrived, they encountered defendant and his wife, S.S.  Williams heard the two arguing; as he approached, defendant walked away, toward a vehicle parked in front of a garage.  When defendant noticed Williams, he ducked behind the vehicle so he was out of view.  Williams then "heard a sound of metal scraping against the concrete driveway," which he recognized to be a firearm.  Except for defendant, no one else was around the vehicle when Williams heard this sound.  Williams handcuffed defendant and told Flores that defendant had dropped something underneath the vehicle.  The deputy looked and found a pink handgun.

Flores spoke with S.S. about the reason she called 911.  S.S. stated she and defendant were arguing, and he started "gettin' violent" and "throwin' [her] all over the house," so she pulled a knife on him.  She explained that she knew "he was gonna hit [her] or somethin'" and she "wasn't going to fuck around and just, and get hit again."  In response, he pulled a gun on her, and they continued to fight.  When defendant prevented

---

[1] Undesignated statutory references are to the Penal Code.

S.S. from leaving the apartment, she hid in the bathroom and called the police. S.S. admitted the pink handgun belonged to her and she kept it in a safe because defendant is not supposed to have access to it. While she was giving her statement to Flores, defendant was shouting, "[inaudible] threw the gun under the car."[2] In response, S.S. denied throwing the gun under the vehicle, saying, "No, I didn't. No, I did not." Defendant also interrupted S.S.'s narrative to accuse her of stabbing him. Later, he pleaded with her as she was speaking to "[l]isten to [him]." He said, "Can you, can you at least hear me out? [Inaudible] Like, is it really that bad where I gotta go to jail [inaudible]."

On August 31, 2022, S.S. was present in court and testified as a witness for the preliminary hearing in another case involving defendant, *People v. Swafford*, Case No. FVI22001007. On November 17 and 18, 2022, S.S. was present in court and testified as a witness for the preliminary hearing in this case, *People v. Swafford*, Case No. FVI22003177.

On November 21, 2022, the San Bernardino County District Attorney charged defendant with possession of a firearm by a felon (§ 29800, subd. (a)(1), count 1), battery on a spouse or cohabitant (§ 243, subd. (e)(1), count 2), false imprisonment (§ 236,

---

[2] Prior to trial, the prosecution moved to introduce defendant's statements during S.S.'s interview with Flores on the grounds neither statement was prompted by any questioning by authority and did not infringe on any of defendant's rights under *Miranda v. Arizona* (1966) 384 U.S. 436. The prosecution stated that during S.S.'s interview, defendant could be "heard yelling several things. First of which is, 'she threw the gun under the car,' which [S.S.] vehemently denies. The second statement of relevance is the defendant again yelling toward [S.S.], 'tell them it was all a mistake.'" The trial court granted the motion.

count 3), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4), count 4). It was further alleged that he suffered a prior serious or violent felony conviction. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

When S.S. did not show to testify at trial, the court found her unavailable and allowed the prosecution to introduce her testimony from both preliminary hearings. She admitted she had an argument with defendant, but denied that it turned physical. She denied that he obtained a firearm, but admitted she owns a pink and black gun. She claimed she retrieved the gun and threw it underneath her car because the police were approaching. She stated that she keeps the gun in a safe in the third bedroom/her office because defendant is not supposed to be in a house with a firearm.

During trial, the prosecution dismissed counts 2 through 4, inclusive. On March 2, 2023, the jury found defendant guilty of felon in possession of a firearm. Defendant waived a jury on all priors and aggravating circumstances; the trial judge found them to be true. He was sentenced to state prison for a total determinate term of four years.

## II. DISCUSSION

Defendant contends the admission of S.S.'s preliminary hearing testimony violated his right to confrontation under the Sixth Amendment and Article I, section 15 of the California Constitution. He argues: (1) the trial court erred in relying upon the prosecutor's unsworn narrative regarding her phone call with S.S.; (2) the prosecution failed to take adequate preventative measures to stop S.S. from disappearing; (3) the prosecution's efforts to locate S.S. were insufficient; and (4) the court prejudicially erred in finding S.S. was unavailable for trial.

4

A. *Applicable Legal Principles.*

A criminal defendant has the right to confront the witnesses against him. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) However, that right is not absolute. (*People v. Wilson* (2021) 11 Cal.5th 259, 290 (*Wilson*).) "If a witness is unavailable but had previously testified against the defendant and was subject to cross-examination at that time, that prior testimony may be admitted." (*Ibid*.; see Evid. Code, § 1291, subd. (a)(2).) This includes preliminary hearing testimony. (*Wilson*, at p. 290.)

Evidence Code section 240, subdivision (a)(5), provides that a witness is "'unavailable'" if the witness is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." Under this subdivision, "[t]he prosecution must demonstrate that 'the witness is unavailable and, additionally, that it made a "good-faith effort" [citation] or, equivalently, exercised reasonable or due diligence to obtain the witness's presence at trial.' [Citation.] While due diligence lacks a precise definition, [the Supreme Court has] explained that it "'"connotes persevering application, untiring efforts in good earnest, [and] efforts of a substantial character."'"" (*Wilson*, *supra*, 11 Cal.5th at p. 291.) "[C]ourts have not found adequate diligence[ when] the efforts of the prosecutor or defense counsel have been perfunctory or obviously negligent." (*People v. Bunyard* (2009) 45 Cal.4th 836, 855.) "On the other hand, diligence has been found when the prosecution's efforts are timely, reasonably extensive and carried out over a reasonable period." (*Id*. at p. 856.)

"We review de novo the trial court's unavailability determination, although we defer to the trial court's determination of historical facts supported by substantial evidence." (*Wilson*, *supra*, 11 Cal.5th at p. 291.) Among the factors to be considered in our independent review are "whether the prosecution timely searched for the unavailable witness, whether the prosecution 'competently explored' leads on the witness's location, and the overall import of the unavailable witness's testimony." (*Ibid*.) "Federal authority also suggests that 'a good measure of reasonableness is to require the State to make the same sort of effort to locate and secure the witness for trial that it would have made if it did not have the prior testimony available.'" (*Id*. at p. 293.) Further, "when there is knowledge of 'a "substantial risk"' that an '"important witness would flee,"' the prosecutor is required to '"take adequate preventative measures" to stop the witness from disappearing.'" (*People v. Friend* (2009) 47 Cal.4th 1, 68.)

### B. Further Background Information.

Prior to trial, the prosecution moved to admit S.S.'s preliminary hearing testimony under Evidence Code section 1291. The prosecution submitted the sworn affidavit of James Wilson, an investigator tasked with locating and serving a subpoena to S.S.

Mr. Wilson's steps to locate and serve S.S. began on August 24, 2022. He went to her known home address at Jess Ranch gated community, but did not contact her in person. That same day, he spoke with her on the phone. She refused to provide her address or place of employment and he arranged a meeting at Applebee's the following morning. On August 25, Investigator Shawn Martin served S.S. with a subpoena and noted the license plate number, make, and color of the car she was driving. On

August 31, S.S. was present in court and testified as a witness in *People v. Swafford*, Case No. FVI22001007.

On September 19, 2022, Mr. Wilson spoke with S.S. on the phone; although she said she would call him back, she did not. He sent a text message on September 20, and when he called her on September 26, 29, and October 19, her phone was out of service. Between October 19 and November 16, Mr. Wilson made extensive investigative efforts to contact S.S. He emailed her, but she did not respond. He searched DMV records for a car registered to her and another car she was using when first served with a subpoena. He conducted surveillance at her most current address and spoke to a neighbor, but was told she moved out in early October. License plate readers showed "hits in high desert area," leading him to search area health care providers as possible employers. On November 9, Mr. Wilson resent a request for information to the Employment Development Department (EDD) and seven days later (on the 16th), he received EDD records showing that she worked for Jess Ranch Healthcare. That day, he visited Jess Ranch Healthcare and served S.S. with a subpoena. He declared: "She works part time at the care facility. She wasn't happy about having to go back to court. She stated that she is homeless and works at Kindred in Ontario as an LVN. She told me that her cellular number . . . is working again."

S.S. testified at the preliminary hearing in this matter on November 17, 2022. That day, she asserted her Fifth Amendment right when asked about the firearm. Counsel was appointed for her, and he requested time to review the discovery. The trial court ordered S.S. to return the next day (November 18th), and she did. On the next day, the

7

prosecutor noted that S.S. "has been incredibly difficult to locate," and stated, "I will be asking—assuming a holding order, I will be asking the Court to order her back for the arraignment on the Information. I just wanted to put that out there so the Court can consider that." The court stated it would consider doing so. Following S.S.'s testimony,[3] the court asked if she could be excused; there was no objection.

While the parties were scheduling a date for the arraignment, the following exchange occurred:

"THE COURT: Also there's been a request that I order [S.S.] to return to court on the date of the arraignment. Where is her counsel?"

"[S.S. COUNSEL]: "Unfortunately, your Honor, I told her to wait in the hallway. When I went back out, she's left the building. I can't find her.

"THE COURT: Well, I'm going to order her to be here. You're still technically the attorney of record, so.

"[S.S. COUNSEL]: I understand that. I will get in contact.

"[¶] . . . [¶]

"THE COURT: All right. So, we'll set the matter for 8:30, December 6th . . . . I will order the witness [S.S.] to be present for that hearing as well. Her counsel is present and is aware of that date."

---

[3] S.S.'s testimony contradicted her statements to Flores. At the prosecution's request, the court admitted the video recording of S.S.'s statement to Flores on the grounds of prior inconsistent statements. Defense counsel did not object.

On December 6, 2022, S.S.'s counsel reported he could not contact S.S. The prosecution requested a bench warrant. Defense counsel objected on the grounds that she had left the courthouse prior to the court making a direct order to return. The court agreed, denied the request, and informed the prosecution that "they will need to subpoena the witness." S.S.'s counsel indicated he would make "a good faith effort to make contact with the witness."

On December 20, 2022, Mr. Wilson sent a text message to S.S., but she did not respond. On January 5, 2023, another investigator went to "Kindred Ontario" and was informed that S.S. did not work there. Mr. Wilson sent a new EDD record request, which he received on January 17, 2023. The EDD report stated that S.S. had worked at Jess Ranch Healthcare and Spring Valley Post Acute. Both locations were checked, but she no longer worked at either location. On January 24, 2023, Mr. Wilson advised the prosecutor he had "no leads on [S.S.'s] whereabouts." He opined that "further reasonable investigation or inquiries would not result in finding [S.S.]."

In response to the prosecution's motion, defense counsel argued that S.S.'s prior appearances indicate that she was not "actively evading [service]. She's just difficult to get ahold of." He asserted more extensive efforts were made to secure her appearance at the second preliminary hearing than for this trial, and "we don't have anything that's been done in the last month to attempt to obtain her. I get it based on her statement when she was last successfully subpoenaed she was homeless. And so obviously these people are—you know, if that's your situation, it's a lot harder to get ahold of somebody, but I

9

don't think anything in the record reflects that she's necessarily trying to evade . . . service. And so I think that it's insufficient."

In reply, the prosecutor maintained that the extensive history within Mr. Wilson's declaration detailing matters prior to the attempt to serve a trial subpoena shows "how difficult [she] is to secure as a witness." She argued it further shows S.S.'s "lack of cooperation considering that there were several times that she said that she would call my investigators back or meet them somewhere or respond to them later and never [did]." She also offered her own efforts to contact the witness: "[T]his past Friday [(February 17, 2023)] I did call the most recent number that we have for her to try to see if I could try to get ahold of her. I asked to speak with [S.S.]. She asked, Who is this? I said, [H.M.] from the district attorney's office. She said, Could you hold on one moment, please? I said, Yes. And then she hung up the phone. [¶] I called back and it went straight to voicemail. I think it rang a couple of times and then went to voicemail. That was just this last Friday." The prosecutor argued that S.S.'s history prior to November 17 "shows a pattern of evasiveness, of dodging service, of not maintaining contact with my office despite our requests, and of intentionally avoiding us. . . . [¶] And so for those reasons, the People have done everything they can to try to secure her attendance at this trial and at this hearing." Defense counsel offered nothing further.

The trial court granted the motion, stating, "I do find based on all of the information that was presented, and what I didn't know before, that she is homeless or reported herself homeless, I will find that she is an unavailable witness. As a result of that, I will allow her prior testimony from the November 2022 preliminary hearing to be

10

presented in this case." The court also granted the request to impeach S.S. with her statements to law enforcement.

### C. Analysis.

#### 1. The prosecutor's unsworn narrative regarding her phone call with S.S.

Defendant contends the trial court abused its discretion to the extent it relied upon the prosecutor's unsworn narrative regarding her phone call with S.S. However, defense counsel never objected to the prosecutor's narrative on grounds of admissibility. Rather, counsel only challenged the sufficiency of her efforts to locate S.S. as outlined by Mr. Wilson in his affidavit. As such, defendant waived the right to assert the prosecutor's narrative regarding her phone call with S.S. was inadmissible. (*People v. Gordon* (1990) 50 Cal.3d 1223, 1255 ["[A] defendant may not complain on appeal that evidence was inadmissible on a certain ground if he did not make a timely and specific objection on that ground in the trial court."].)

Moreover, the trial court could properly exercise its discretion to consider the prosecutor's representations regarding her own actions—without requiring her to testify formally—to determine whether due diligence had been exercised. (*People v. Smith* (2003) 30 Cal.4th 581, 608-612.) In *Smith*, the Supreme Court concluded that "[t]he prosecution met its burden of showing due diligence" (*id*. at p. 611) in part based on the prosecutor's "representation as an officer of the court" where the trial court did not "require[] him to testify formally" (*id*. at p. 608). While such "information may have been legally incompetent" for other purposes, "it sufficed to show that the prosecution made reasonable efforts to locate" a missing witness. (*Id*. at p. 611.) There is no error in

11

considering the prosecutor's representations for this purpose given that "attorneys are officers of the court, and '"when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."'" (*Holloway v. Arkansas* (1978) 435 U.S. 475, 486; see *People v. Laudermilk* (1967) 67 Cal.2d 272, 286 [regarding "statements of a responsible officer of the court as tantamount to sworn testimony" where defense counsel was "describing and representing to the court his own personal experiences with and observations of his client"].)

      2. *The adequate preventative measures to stop S.S. from disappearing.*

Next, defendant faults the prosecutor for failing to take adequate preventative measures to stop S.S. from disappearing. He argues that by the time of the November preliminary hearing, it was "well understood" that she was a flight risk, and thus her disappearance "should have been anticipated." Defendant asserts (1) Mr. Wilson could and should have spoken with S.S. to gather more details about her living circumstances, and (2) the prosecutor and investigator failed to follow known leads at the time when she disappeared immediately following the November preliminary hearing. According to defendant, S.S. was merely "a very difficult person to keep track of."

"The prosecution is not required 'to keep "periodic tabs" on every material witness in a criminal case . . . .' [Citation.] Also, the prosecution is not required, absent knowledge of a 'substantial risk that this important witness would flee,' to 'take adequate preventative measures' to stop the witness from disappearing." (*People v. Wilson* (2005) 36 Cal.4th 309, 342.) Except for describing S.S. as a flight risk, defendant does not point to any evidence that the prosecution knew of a substantial risk that she would disappear

12

after the November preliminary hearing. At that hearing, she was appointed counsel who was present when the trial court ordered her to return to court on December 6, 2022. On December 6, S.S.'s counsel reported he could not contact S.S. The trial court denied the prosecutor's request for a bench warrant and informed her that she "will need to subpoena the witness." S.S.'s counsel indicated he would make "a good faith effort to make contact with the witness." In December 2022 and January 2023, the prosecution searched for S.S. who, as defendant describes, was "a very difficult person to keep track of." When the prosecution called S.S., she either hung up the phone or refused to answer.

Relying on *People v. Louis* (1986) 42 Cal.3d 969 (*Louis*), defendant contends the prosecution had a "high burden to secure" S.S.'s testimony. We disagree. In *Louis*, "it was known by the parties and the court that [the absent witness] had been convicted of several felonies, including burglary, grand theft, and receiving stolen property; that he had been committed to a hospital for the criminally insane; that he had used nine or ten aliases over a long and varied criminal career; that he habitually failed to make court appearances and had to be arrested to compel his attendance; and that he apparently had some expectation of receiving a reward if the defendants were convicted as a result of his testimony." (*Id.* at p. 989.) His testimony was the "the most critical evidence for the prosecution's case [because] . . . 'the sole evidence identifying defendant as the trigger man came from [the absent witness].'" (*People v. Ayala* (2024) 101 Cal.App.5th 62, 71.) Thus, according to *Louis*, when a particular witness's testimony is critical to the prosecution's case, the People must take reasonable steps to prevent the witness from disappearing. (*Louis*, at pp. 989-991.)

13

Unlike the absent witness in *Louis*, S.S. had no criminal background, and her testimony, albeit important, was not the only evidence of defendant's unlawful possession of a firearm. In response to a 911 call, law enforcement arrived at the apartments where S.S. and defendant were living. Upon arrival, Williams heard the sound of a gun sliding across the concrete under a car and saw defendant, the only person near the car. Flores recovered a gun under the car pointed out by Williams.

Regarding the possibility that S.S. would disappear prior to trial, during the November preliminary hearing, the prosecutor informed the trial court that S.S. was "incredibly difficult to locate" and indicated the need for a holding order, which the court indicated it would consider. On December 6, 2022, the prosecutor also requested a bench warrant, but the court denied the request because only S.S.'s counsel was present in court when S.S. was ordered to return. Based on this evidence, we conclude the prosecutor did not fail to take adequate preventative measures to stop S.S. from disappearing.

3. *The prosecution's efforts to locate S.S.*

Next, defendant challenges the prosecution's efforts to find S.S. as insufficient. He argues the prosecution failed to show that S.S. remained unavailable at the time of trial because Mr. Wilson's last investigative action occurred on January 17, 2023.

Here, the prosecutor acted with due diligence in attempting to secure S.S.'s presence at trial. At the November preliminary hearing, she informed the trial court about the difficulties she experienced in locating S.S. and requested a holding order; her request was denied. Nonetheless, the court instructed S.S.'s counsel that she was ordered to return to court on December 6, 2022. When S.S. failed to appear on that date (her

counsel also stated his inability to contact her), the prosecutor requested a bench warrant; again, her request was denied.[4] Mr. Wilson continued to search for S.S. through January 2023; however, he was unsuccessful. On February 17, 2023, five days before the start of trial, the prosecutor called S.S.'s phone, asked to speak to S.S., identified herself, and was put on hold. The phone then disconnected, and the prosecutor's subsequent calls were unanswered.

On this record, we conclude the prosecution used reasonable efforts to locate S.S. While it may be true the prosecution could have pursued additional avenues of investigation, this does not change our conclusion. "It is settled that the fact 'additional efforts might have been made or other lines of inquiry pursued does not affect [a finding of reasonable diligence]. [Citation.] It is enough that the People used reasonable efforts to locate the witness.'" (*People v. Royal* (2019) 43 Cal.App.5th 121, 136; see *People v. Diaz* (2002) 95 Cal.App.4th 695, 706 ["'The law requires only reasonable efforts, not prescient perfection.'"].)

---

[4] Defendant asserts "no effort was made to locate [S.S.] between the preliminary hearing on November 18, 2022, and December 20, 2022." He argues the failure to search for "over a month after the preliminary hearing was untimely." However, S.S. was represented by counsel who was instructed that she was ordered to return to court on December 6. When she failed to return on that date, the prosecution was informed that "they will need to subpoena [her]." The failure to obtain further details about where to find her during the preliminary hearing was justified by the fact she was represented by counsel. Moreover, on December 6, her counsel informed the trial court that he would make "a good faith effort to make contact with [her]."

*4. S.S.'s unavailability for trial.*

Finally, defendant argues the trial court prejudicially erred in finding S.S. unavailable pursuant to Evidence Code section 240 and subsequently admitting her preliminary hearing testimony. However, he concedes that, if we conclude S.S. was unavailable, no constitutional error would follow. Without reiterating the evidence, the prosecution's efforts to secure S.S.'s presence at defendant's trial were "timely, reasonably extensive and carried out over a reasonable period." (*People v. Bunyard*, *supra*, 45 Cal.4th at p. 856.) Thus, we conclude the trial court correctly found S.S. was unavailable for purposes of Evidence Code section 240, subdivision (a)(5). In light of our conclusion, we do not address defendant's claim the alleged error was prejudicial.

### III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
J.

We concur:

RAMIREZ _____
P. J.

FIELDS _____
J.